# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

NATALIE MIZYSAK,

                    Plaintiff,

          v.                              Case No. 18-CV-1400

LVNV FUNDING, LLC, et al.,
                    Defendants.

NATALIE MIZYSAK,

                    Plaintiff,

          v.                              Case No. 19-CV-1347

LVNV FUNDING, LLC, et al.,
                    Defendants.

## DECISION AND ORDER

Plaintiff Natalie Mizysak filed two lawsuits against largely the same defendants. In Case No. 18-cv-1400 (*Mizysak I*), filed in this court, she sued Arrow Financial Services, LLC (Arrow), Daubert Law Firm, LLC (Daubert) and LVNV Funding, LLC (LVNV) for alleged violations of the Fair Debt Collection Practices Act (FDCPA) and the Wisconsin Consumer Act (WCA). She subsequently dismissed Arrow (ECF No. 13) from the lawsuit

and added defendants Resurgent Capital Services, LP (Resurgent), CenterPoint Legal Solutions, LLC (CenterPoint), and Michael Stueland (ECF No. 46). Also, although titled as a claim under the WCA, Mizysak added what can be best characterized as a common law conversion claim. (ECF No. 46, ¶¶ 128-35.) The parties then stipulated to the dismissal of Daubert and Stueland (ECF No. 88.)

In Case No. 19-cv-1347 (*Mizysak II*), originally filed in Wisconsin Circuit Court but removed to this court by the defendants, Mizysak alleges that LVNV, Daubert, Resurgent, CenterPoint, and InvestiNet, LLC (InvestiNet) violated the FDCPA and the WCA. The parties subsequently stipulated to Daubert's dismissal. (19-CV-1347, ECF No. 26.)

The court consolidated both actions. (ECF No. 82.) The defendants move to dismiss the amended complaints in both lawsuits. The motions have been fully briefed and are ready for resolution. All parties have consented to the jurisdiction of this court.

## 1. Background

The following facts are taken from Mizysak's amended complaint in *Mizysak I* and provide the factual background for both lawsuits.

In 2005, a person in Texas stole Mizysak's identity. (ECF No. 46, ¶ 27.) The identity thief incurred a debt with GE Money. (*Id.*, ¶ 28.) When Mizysak learned of the theft in 2010, she contacted GE Money, who "quickly agreed that Mrs. Mizysak had no liability on the account." (*Id.*, ¶¶ 29-33.) "GE Money promised to wipe out the account and make sure it wasn't reporting to her credit." (*Id.*, ¶ 35.)

However, GE Money had in the interim sold the account to Arrow Financial. (ECF No. 46, ¶ 36.) In November 2007, Arrow Financial had sued Mizysak in Milwaukee County Circuit Court to collect on the account. (*Id.*, ¶ 37.) Mizysak was unaware of the 2007 lawsuit because Arrow Financial served her by way of "publication notice" at an address at which she had never resided. (*Id.*, ¶ 38.) A default judgment was entered. (*Id.*, ¶ 37.)

In 2011 Arrow Financial assigned the judgment to LVNV. (ECF No. 46, ¶ 40.) In January 2014 Mizysak informed LVNV and Resurgent, LVNV's collection agent, of her lack of liability on the account. (*Id.*, ¶ 47.) In February 2014 Mizysak received collection calls from LVNV or one of its agents. (*Id.*, ¶ 56.) Mizysak again faxed information showing she was not liable on the account. (*Id.*)

In January 2016 Mizysak received a collection letter from Daubert. (ECF No. 46, ¶ 59.) Daubert and Stueland had taken over collection on the account and judgment. (*Id.*, ¶ 60.) Mizysak immediately communicated with Daubert, informing it that she did not owe the debt. (*Id.*, ¶ 61.) She provided Daubert with evidence of the identity theft. (*Id.*, ¶ 62.) Daubert and/or Stueland sent the information received from Mizysak to CenterPoint. (*Id.*, ¶ 63.) CenterPoint then sent the information to Resurgent. (*Id.*, ¶ 64.)

In June 2016 Mizysak received notification that Daubert and LVNV were attempting to garnish her wages. (ECF No. 46, ¶ 85.) After additional communication with Daubert, Mizysak was told that efforts to collect on the judgment would stop. (*Id.*,

¶¶ 86-91.) Nonetheless, two years later, in June 2018, Daubert proceeded to garnish Mizysak's wages. (*Id.*, ¶ 92.)

## 2. Procedural History

On September 10, 2018, Mizysak filed *Mizysak I* against Arrow, Daubert, and LVNV for alleged violations of the FDCPA and the WCA. She dismissed Arrow a month later. (ECF No. 13.) She amended her complaint on July 30, 2019, adding defendants Resurgent, CenterPoint, and Stueland. Count 1 of the amended complaint alleges that "[t]he foregoing facts of the Defendant (sic) and its agents constitute numerous and multiple violations of the FDCPA[.]" (ECF No. 46, ¶ 111.) Count 2 alleges that the same conduct violated the WCA. (ECF No. 46, ¶¶ 120-27.) And Count 3, although titled as alleging a violation of the WCA, is actually a common law conversion claim wherein Mizysak alleges that "LVNV, Resurgent, Daubert and Stueland have in their possession funds they took from Plaintiff's wages." (ECF No. 46, ¶ 129.)

On May 16, 2019, Mizysak filed *Mizysak II* in Waukesha County Circuit Court against LVNV for alleged violations of the WCA. On August 29, 2019, Mizysak amended her state court complaint, adding an FDCPA claim and adding Resurgent, InvestiNet, and CenterPoint as defendants. In her amended complaint, Mizysak alleges that the defendants violated various provisions of the FDCPA when they "tried to collect on a false, incomplete, illegal and otherwise void assignment of judgment, and when Defendants InvestiNet and CenterPoint engaged in Wisconsin collection activities

without a license (and the violative nature of their actions of Wisconsin collection regulations)." (19-CV-1347, ECF No. 1-2, ¶¶ 103-07.) Mizysak also alleges that the defendants violated the WCA when they engaged in conduct, including collection activity without a state license, that "can reasonably be expected to harass someone." (19-CV-1347, ECF No. 1-2, ¶¶ 94-95.) She further alleges that the defendants violated the WCA by trying to collect a debt when they "had knowledge that they had no right to collect on the debt due to the legally invalid assignment." (19-CV-1347, ECF No. 1-2, ¶ 97.)

On September 16, 2019, LVNV and Resurgent removed *Mizysak II* to this court based on federal question jurisdiction. (19-CV-1347, ECF No. 1.) In doing so, the defendants purported to remove only the FDCPA claims while leaving the WCA claims in state court. In denying Mizysak's motion to remand, the court noted that such purported partial removal was improper, and the entire case is now pending in federal court. (ECF No. 86.)

The defendants in *Mizysak I* have moved to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(1) "because the Amended Complaint now makes it clear that Plaintiff seeks to use the federal case as a means of challenging the 2008 Wisconsin state court judgment." Additionally, despite having removed this action to federal court, the defendants in *Mizysak II* have now moved to dismiss that complaint, in part, under Rule 12(b)(1) for lack of subject matter jurisdiction. They also seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Before

5

those motions were fully briefed, Mizysak moved to consolidate both actions, which motion the court granted on October 18, 2019.

Following consolidation, the court discussed the status of these motions at a conference and instructed the defendants to refile the motions to dismiss in the consolidated action (ECF No. 87 at 2), which is proceeding now under the case number 18-CV-1400. CenterPoint, InvestiNet, LVNV, and Resurgent refiled their motion to dismiss the complaint in *Mizysak II*. (ECF No. 93.) Therefore, the motions to dismiss pending in 19-CV-1347 (ECF Nos. 7, 10) are moot and dismissed as such.

## 3. Legal Standard

A motion brought pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the subject matter jurisdiction of the court. The court is required to consider subject matter jurisdiction as the first question in every case, and a suit must be dismissed if such jurisdiction is lacking. *Jakupovic v. Curran*, 850 F.3d 898, 902, (7th Cir. 2017). A district court in ruling on an issue of subject matter jurisdiction must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604 (7th Cir. 2008).

The defendants also move to dismiss certain claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

In reviewing a plaintiff's claims, the court must construe all of the plaintiff's factual allegations as true and must draw all reasonable inferences in the plaintiff's favor. But legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption. *Iqbal*, 556 U.S. at 679. Dismissal for failure to state a claim under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558.

## 4. Analysis

In *Mizysak I*, LVNV argues that the court lacks jurisdiction over Mizysak's claims because they all amount to challenges to the default judgment entered in state court. (ECF No. 55.) Under the *Rooker-Feldman* doctrine, *see Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923), a federal district court lacks jurisdiction to overturn a state court judgment. Resurgent and CenterPoint, who are represented by the same attorneys as LVNV, each filed a substantively identical motion to dismiss. (ECF Nos. 54, 56.)

As to *Mizysak II,* in their amended motion CenterPoint, InvestiNet, LVNV, and Resurgent move to dismiss the amended complaint on various grounds. They argue that the court lacks jurisdiction over Mizysak's FDCPA claim under the *Rooker-Feldman* doctrine. (ECF No. 94 at 5-7.) They also argue that Mizysak's contention that the assignment of the judgment to LVNV was improper under Wisconsin law does not state a claim under the FDCPA. (ECF No. 94 at 7-9.) Their third argument is that Mizysak engaged in claim splitting. (ECF No. 94 at 9-13.) Finally, they claim that Mizysak's FDCPA claim is barred by the statute of limitations. (ECF No. 94 at 13-14.)

The defendants also move to dismiss Mizysak's WCA claims on several grounds. First, they contend that the claims are barred by the doctrine of claim preclusion. (ECF No. 94 at 14-17.) Second, they argue that Mizysak's allegation that CenterPoint and InvestiNet lacked a debt-collection license does not support a claim under the WCA. (ECF No. 94 at 17-18.) And, lastly, they contend that Mizysak's claims against CenterPoint and InvestiNet are barred by the statute of limitations (ECF No. 94 at 18-19).

## 4.1. *Rooker-Feldman*

The *Rooker-Feldman* doctrine derives its name from two Supreme Court decisions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983). Together they "hold that the Supreme Court of the United States is the only federal court that may review judgments entered by state courts in civil litigation." *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014). Thus, the doctrine "precludes

lower federal court jurisdiction over claims seeking review of state court judgments…no matter how erroneous or unconstitutional the state court judgment may be." *Kelley,* 548 F.3d at 603 (quoting *Remer v. Burlington Area Sch. Dist.* 205 F.3d 990, 996 (7th Cir. 2000)); *see also Jakupovic*, 850 F.3d at 902 ("[N]o matter how wrong a state court judgment may be under federal law, only the Supreme Court of the United States has jurisdiction to review it.") (quoting *Sykes v. Cook Cty. Cir. Ct. Prob. Div.*, 837 F.3d 736, 741-42 (7th Cir. 2016)). "A state litigant seeking review of a state court judgment must follow the appellate process through the state court system and then directly to the United States Supreme Court." *Kelley,* 548 F.3d at 603.

The doctrine applies not only to claims that were actually raised before the state court but also to claims that are inextricably intertwined with state court determinations. *Id*. But it is a narrow doctrine, "confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (citing *Exxon Mobil Corp. v. Saudi Basic Industries*, 544 U.S. 280, 284 (2005)). The doctrine does not prevent a losing litigant from presenting an independent claim to a district court. *Exxon Mobil*, 544 U.S. at 293.

In determining whether the federal plaintiff is seeking to set aside a state court judgment or is presenting an independent claim, the "determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or

alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Jakupovic*, 850 F.3d at 902 (quoting *Sykes*, 837 F.3d at 742). "For a federal claim to be barred, 'there must be no way for the injury complained of by [the] plaintiff to be separated from [the] state court judgment.'" *Id.* at 903 (quoting *Sykes*, 837 F.3d at 742).

The defendants' argument that Mizysak's claims are barred by the *Rooker-Feldman* doctrine is as follows:

> [Mizysak] claims the Defendants' actions were wrongful when "they tried to collect on a debt they knew that Mrs. Mizysak didn't owe, ignored evidence of identity theft, garnished her over a debt she didn't owe, refused to return her garnished wages, and then engaged in collection attempts during the 2018 filings and letters sent to her." (ECF No. 46, ¶¶ 113-117, 123, 125.) Defendants engaged in collection activity with [Mizysak] because a judgment was rendered against her. In direct contradiction to the judgment, [Mizysak] claims that Defendants' actions were wrongful because [Mizysak] did not owe the debt that formed the basis of the judgment. [Mizysak's] alleged injuries were therefore caused by the judgment.

(ECF No. 55 at 5; ECF No. 57 at 5.)

In response, Mizysak insists that she is not asking the court to "review, reject or change the state court judgment." (ECF No. 67 at 2.) While denying the validity of the state court judgment, Mizysak contends she is seeking relief for "the harassing and abusive nature" of the defendants' collection actions. (*Id.* at 3.) Those "harassing and abusive" collection actions include: LVNV "continu[ing] to retain new and different debt collectors to harass Plaintiff for money after having knowledge of the fraud, and/or acknowledgement of the fraud"; and "CenterPoint engag[ing] in collection attempts

without making any meaningful or real investigation into Plaintiff's allegations of identity theft," followed by the defendants directing more collection actions toward Mizysak. (*Id.* at 3-4.[1])

In short, Mizysak says, she "was subjected to false promises about the investigation into the identity theft [and] how … LVNV would vacate the judgment…. Each of these actions…occurred separate and distinct from the entry of the state court judgment." (ECF No. 67 at 6.) She does *not* argue that she lacked a reasonable opportunity to raise these issues in state court. *Cf. Jakupovic*, 850 F.3d at 902 ("If we determine that a claim is inextricably intertwined with a state court judgment—that is, that the former indirectly seeks to set aside the latter—then we must determine whether the plaintiff had a reasonable opportunity to raise the issue in state court proceedings.").

In reply, the defendants argue that Mizysak's claims "are inextricably intertwined with the state court judgment and state court garnishment." (ECF No. 69 at 1.) They contend that "[i]t is clear from the allegations that Plaintiff's real gripe is that she was subject to collection of a judgment debt resulting from an alleged identity theft." (*Id.* at 2.) They say that "[t]his court cannot analyze [Mizysak's] claims without questioning whether or not the judgment and subsequent garnishment were valid or invalid." (*Id*. at 3.) "[B]ecause it is not a violation of the FDCPA to seek payment on a valid state court

---

[1] In recounting Mizysak's arguments, the court omits arguments related exclusively to Daubert who has been dismissed since Mizysak filed her response.

judgment or to start a wage garnishment on a valid state court judgment[,]" "[w]ithout the allegations of identity theft, Plaintiff has no predicate upon which she could frame her claims." (*Id*.)

### 4.1.1. The Claims in the Plaintiff's Amended Complaint in *Mizysak I*

As alleged in the amended complaint, the common denominator in nearly all of Mizysak's claims is that the defendants violated 15 U.S.C. §§ 1692d, 1692e(2), (5), (10), 1692f(1) and the WCA when they "tried to collect on a debt they knew that Mrs. Mizysak didn't owe, ignored the evidence of identity theft, garnished her over a debt she didn't owe, refused to return her garnished wages, and then engaged in collection attempts during the 2018 filings and letters sent to her." (ECF No. 46, ¶¶ 113-17, 123.)

The alleged impropriety of all of the defendants' conduct derives from the fact that Mizysak was not liable for the debt. But the state court, by virtue of entering a default judgment, had already said that she *was* responsible for the debt. To find that the defendants violated the FDCPA and WCA as alleged by Mizysak would require finding that Mizysak was not liable for the underlying debt. Consequently, Mizysak's claims are "not independent of nor extricable from the state-court judgment." *Mains v. Citibank, N.A.*, 852 F.3d 669, 677 (7th Cir. 2017) (finding plaintiffs' FDCPA claims were barred under *Rooker-Feldman* in light of a state court foreclosure judgment). Rather, "the state court's judgment is the source of the injury of which plaintiff[] complain[s] in federal court." *Harold*, 773 F.3d at 885.

Were this court to enter judgment saying that the defendants violated the FDCPA or WCA because they attempted to collect a debt for which Mizysak was not liable, such a judgment would be facially inconsistent with the state court judgment saying that Mizysak *was* liable for the debt. That is what *Rooker-Feldman* forbids. *See Mains*, 852 F.3d at 677 ("Again, these claims could be sustained only by disregarding or effectively vacating the state judgment's [sic] judgment of foreclosure. The state court determined the amounts due and [the plaintiff's] obligation to pay them, and a lower federal court is not empowered to second-guess that decision.").

Thus, the court lacks jurisdiction over the claims alleged in paragraphs 113-17, 123, and 125 in Counts 1 and 2 of the amended complaint.

So, too, with respect to Mizysak's common law conversion claim, Count 3 in the amended complaint. Under Wisconsin law, for a jury to find conversion it must find:

1. That (defendant) intentionally (controlled) (took) property belonging to (owner);
2. That (defendant) (controlled) (took) the property without the consent of (owner) or without lawful authority; and
3. That (defendant)'s act with respect to the property seriously interfered with the right of (owner) to possess the property.

Wis. JI Civ. 2200. Thus, a defendant does not commit conversion if it acquired the property with lawful authority. *Id.*

To find that any defendant acquired Mizysak's property—her garnished wages—without lawful authority would require a finding that the defendant's purported authority for acquiring that property—the small claims judgment and the garnishment

judgment—was unlawful. Such a claim is "dependent upon and interwoven with the state-court litigation," *Mains*, 852 F.3d at 677, specifically, the garnishment judgment. Consequently, *Rooker-Feldman* deprives the court of jurisdiction over Count 3 of the amended complaint.

However, a debt collector does not evade liability in federal courts for abusive debt collection practices merely because it was attempting to collect on a state court judgment. *See Woltring v. Specialized Loan Servicing, LLC*, No. 14-CV-222, 2014 U.S. Dist. LEXIS 81433, at *6 (E.D. Wis. June 16, 2014) ("FDCPA claims will often emerge from efforts to collect on state court judgments."). The court has jurisdiction over any plausible claim that does not depend on a finding that Mizysak is not liable for the underlying debt.

Mizysak alleges in Count 1 of her amended complaint:

Specifically, under 15 U.S.C. § 1692c(a)(3) [sic], a debt collector cannot communicate with a represented party. Here Defendants Resurgent, LVNV, and CenterPoint knew Plaintiff weas [sic] represented by counsel with respect to the debs [sic] in question, yet they communicated directly with her via their agent in 2018.

(ECF No. 46, ¶ 112.) The FDCPA states:

Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt— …

(2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt

collector or unless the attorney consents to direct communication with the consumer ….

15 U.S.C. § 1692c(a)(2).

A claim under 15 U.S.C. § 1692c(a)(2) does not implicate the validity of the underlying judgment or garnishment. Regardless of whether the underlying debt is valid or invalid, a debt collector attempting to collect on a judgment is prohibited from communicating with a consumer who is represented by an attorney regarding that debt. Therefore, the court has jurisdiction over this claim.

### 4.1.2. Theories Articulated in Mizysak's Response in *Mizysak I*

In her response to the defendants' motion to dismiss in *Mizysak I*, Mizysak presents theories of liability not directly found in her amended complaint:

1. Defendant LVNV continued to retain new and different debt collectors to harass Plaintiff for money after having knowledge of the fraud, and/or acknowledgement of the fraud. Dkt. 46, ¶¶ 36, 47, 56, 59, 79-81.

2. Defendant LVNV … engaged in harassing and abusive collection behaviors in how they treated and handled Plaintiff's disputes related to identity theft. *Id.*, ¶¶ 49-55, 61-8.

…

4. Defendant … CenterPoint engaged in collection attempts without making any meaningful or real investigation into Plaintiff's allegations of identity theft. *Id.*, ¶¶ 50-55, 57-58, 63-65, 68-69, 71-75, 78-83, 87-91.

6. Defendants acknowledged the ID theft, yet attempted to retain a right to collection by filing for a vacation of the judgment without prejudice. *Id.*, ¶¶ 103-106.

…

> 10. After [Daubert's] 2017 promise, Defendants directed more collection actions towards Plaintiff. These post-promise actions are violative of the 2016/17 promises made (and relied upon) by Plaintiff. They are not an attack on the judgment; they are an attack on the collection behavior and promises. *Id.*, ¶¶ 27-93.

(ECF No. 67 at 3-4 (references to theories of liability against dismissed defendant Daubert omitted).)

As to the first theory, the court does not understand Mizysak to be alleging that merely reassigning the debt violated the FDCPA. Such an allegation would be unlikely to state a claim. Rather, Mizysak alleges that it was harassing for LVNV to continue to reassign and attempt to collect on the debt when the defendants knew Mizysak was not liable for the debt. This theory clearly depends on her not being liable for the underlying debt, which is inconsistent with the judgment of the state court.

As to her second theory, the court is not deprived of jurisdiction simply because the allegedly abusive or harassing conduct related to the collection of a state court judgment. But Mizysak does not allege that LVNV engaged in any abusive or harassing conduct other than trying to collect on that judgment. Mizysak presents no authority that suggests that a debt collector is obligated under the FDCPA to second-guess a facially valid state court judgment. To find that it was abusive or harassing for a debt collector to attempt to collect on a facially-valid state court judgment would require a finding that

Mizysak really was not liable for the debt. Again, under *Rooker-Feldman* this court would not have jurisdiction over such a claim.

As her fourth theory Mizysak argues that CenterPoint violated the FDCPA by not properly investigating her claims of identity theft. But the court lacks jurisdiction over such a claim for the reasons articulated above regarding her third theory. It is undisputed that the defendants were attempting to collect on a judgment against Mizysak. Mizysak presents no authority that suggests that a debt collector is obligated under the FDCPA to second-guess a facially valid state court judgment. To find any plausible error in the defendants' failure to investigate would require a finding that Mizysak really was not liable for the debt. Again, this court exercising jurisdiction over such a claim would be inconsistent with *Rooker-Feldman*.

As for Mizysak's sixth theory, setting aside the court's strong doubts as to whether seeking to dismiss the state court judgment without prejudice could plausibly violate the FDCPA, such action could be improper only if Mizysak was not liable for the debt. Thus, this again goes to whether the debt was incurred as a result of identity theft, a conclusion that would be inconsistent with the state court judgment against Mizysak.

Mizysak's final theory of liability alleges that the defendants violated the FDCPA by engaging in collection actions after Daubert promised to stop. (ECF No. 67 at 4, ¶ 10.) Notably, Mizysak is *not* alleging that any remaining defendant made a false promise to cease collection. Rather, she is alleging that the defendants violated the FDCPA by failing

to abide by a promise made by dismissed defendant Daubert. Setting aside questions of whether a defendant could violate the FDCPA by failing to abide by a promise made by someone else (an issue not raised by the parties), such a claim would not necessarily be inconsistent with the state court judgment. Thus, if cognizable under the FDCPA, *Rooker-Feldman* would not preclude the court from hearing such a claim.

But Mizysak's amended complaint does not contain a claim that can be fairly construed as alleging that the defendants violated the FDCPA by failing to honor Daubert's promise. In an effort to demonstrate that the amended complaint does contain such a claim, Mizysak refers to 67 paragraphs of factual allegations in her amended complaint. (ECF No. 67 at 4, ¶ 10 (citing ECF No. 46, ¶¶ 27-93).) However, the vast majority of the factual allegations in those paragraphs predate Daubert's purported promise in January of 2017. (ECF No. 46, ¶ 89.) And in making this final argument, Mizysak never identifies which specific provisions of the FDCPA the defendants allegedly violated.

Therefore, with respect to the amended complaint in *Mizysak I*, the court has jurisdiction over only a single claim: that the defendants violated 15 U.S.C. § 1692c(a)(2) by contacting her after they knew she was represented by an attorney with respect to the debt. In all other respects, the amended complaint in *Mizysak I* must be dismissed without prejudice.

### 4.1.3. The FDCPA Claim in the Plaintiff's Amended Complaint in *Mizysak II*

The defendants also move to dismiss Mizysak's FDCPA claim in the amended complaint in *Mizysak II* under *Rooker-Feldman.* That claim alleges that the defendants violated 15 U.S.C. §§ 1692d, 1692e(2), (5), (10), and 1692f(1) "when they tried to collect on a false, incomplete, illegal and otherwise void assignment of judgment, and when Defendants InvestiNet and CenterPoint engaged in Wisconsin collection activities without a license (and the violative nature of their actions of Wisconsin collection regulations)." (Case No. 19-CV-1347, ECF No. 1-2, ¶¶ 103-07.)

Arrow Financial obtained the default judgment against Mizysak. (Case No. 19-CV-1347, ECF No. 1-2, ¶26.) An assignment of that judgment was required to enable the subsequent debt collectors to attempt to collect on that judgment. Mizysak alleges that the procedures the defendants used to execute the assignment were improper. (Case No. 19-CV-1347, ECF No. 1-2, ¶¶ 31-42, 53-55.) She points to *Marquez v. Weinstein, Pinson & Riley, P.S.*, 836 F.3d 808, 812 (7th Cir. 2016), where the Court of Appeals for the Seventh Circuit held that "representations may violate § 1692e of the FDCPA even if made in court filings in litigation."

In *Marquez,* a debt collector sued the debtor in state court to collect a student loan debt. The state court complaint included a statement, commonly seen in debt collection letters, "that the debt referenced in this suit will be assumed to be valid and correct if not disputed in whole or in part within thirty (30) days from the date hereof." *Id.* at 810. This

statement was confusing because the plaintiff actually had longer in which to file an answer to the lawsuit.

The court of appeals in *Marquez* never addressed *Rooker-Feldman*. And based on the facts recounted in the decision, there is no reason to believe the doctrine was relevant. There would be no inherent tension between a state court judgment finding Marquez liable for the underlying debt and a federal court judgment finding the debt collector misled the debtor as to how long he had to challenge the debt.

Here, Mizysak seeks to enforce a state procedural rule (regarding the proper way to execute an assignment) through an FDCPA claim in federal court. There is no "'procedural exception' to the *Rooker-Feldman* doctrine." *Harold*, 773 F.3d at 887. Mizysak's claim is closer to that raised in *Harold v. Steel*, 773 F.3d 884 (7th Cir. 2014), than *Marquez*. In *Harold*, the plaintiff alleged that the defendant violated the FDCPA by trying to collect on a judgment that, because of noncompliance with state procedures, it did not actually own. But because a state court had entered a garnishment order in favor of the defendant—thus accepting that it had a right to collect on the judgment—the federal court lacked jurisdiction to consider the FDCPA claim. *Id.* at 885.

Similarly, by virtue of entering the garnishment judgment, the state court here necessarily approved of the assignment of the judgment. If this court were to enter judgment finding that any defendant violated the FDCPA on Mizysak's theory that the assignment was improper, that would be inconsistent with the state court's approval of

the assignment and the subsequent garnishment judgment. Again, this is precisely what *Rooker-Feldman* forbids.

Because the court lacks jurisdiction over the FDCPA claim, it cannot consider the defendants' argument that this claim does not constitute a violation of the FDCPA and therefore should be dismissed with prejudice. (ECF No. 94 at 7-9); *see Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

Mizysak's alternative argument, that InvestiNet and CenterPoint violated the FDCPA (and the WCA) by engaging in Wisconsin collection activities without a license, is not necessarily inconsistent with the state court judgment. Nor do the defendants argue that it is. Therefore, *Rooker-Feldman* does not deprive the court of jurisdiction over such a claim. Although the defendants argue that the absence of a state collection license cannot violate the WCA, and thus move to dismiss Mizysak's WCA claims on that basis, they have not similarly moved to dismiss Mizysak's parallel FDCPA claim. Therefore, the court must consider whether Mizysak's FDCPA claims are otherwise subject to dismissal.

### 4.2. The FDCPA and the Statute of Limitations in *Mizysak II*

InvestiNet and CenterPoint argue that Mizysak's FDCPA claim against them is untimely under the FDCPA's one-year statute of limitations. "Although the statute of limitations is an affirmative defense, dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate if the complaint contains everything necessary to establish that the claim is untimely." *Collins v. Vill. of Palatine*, 875 F.3d 839, 842 (7th Cir.

2017) (citing *Bonnstetter v. City of Chicago*, 811 F.3d 969, 974 (7th Cir. 2016)). The statute of limitations under the FDCPA "begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019). Mizysak's action against InvestiNet and CenterPoint was filed on August 27, 2019. (Case No. 19-CV-1347, ECF No. 1-2.) Thus, to be timely, InvestiNet and CenterPoint must have engaged in unlicensed collection activity as to Mizysak after August 27, 2018.

Mizysak's response to the defendants' motion to dismiss does not address InvestiNet and CenterPoint specifically. The only conduct that Mizysak identifies as possibly occurring within a year of the filing of the amended complaint is this: "Defendants filed a 'transcript of judgment' in this case in 2018 and thereafter garnished upon that judgment. Dkt. 1-2, Exhibit A, ¶¶53-63." (ECF No. 96 at 10-11.) She then offers the following conclusory argument: "It is clear from the amended complaint that the violative conduct occurred within one year of the filing of this case." (ECF No. 96 at 11.)

With regard to InvestiNet, Mizysak's amended complaint includes only the following allegations from which the court can identify when InvestiNet allegedly violated the FDCPA:

32. In 2016, Defendant LVNV had executed an alleged "power of attorney" that gave Defendant Resurgent the right to collect on its behalf.

33. Defendant Resurgent then retained Defendant InvestiNet to collect on the judgments.

34. Defendant InvestiNet then retained Defendant Daubert to collect on the judgments.

35. In this game of "collection telephone," Defendant Daubert had no interaction with (nor spoke to) Defendants Resurgent or LVNV. Defendant Daubert only communicated with Defendant InvestiNet on the account.

36. When Defendant Daubert realized it needed an assignment of judgment in 2016, it could not and did not actually speak to the judgment holder, Defendant LVNV.

(Case No. 19-CV-1347, ECF No. 1-2, ¶¶ 32-36.)

The amended complaint contains no hint that InvestiNet engaged in any collection activity within the year preceding the filing of the amended complaint. As for Mizysak's allegation regarding the filing of the transcript of judgment, that allegation relates only to "LVNV, Resurgent, Daubert, and CenterPoint." (Case No. 19-CV-1347, ECF No. 1-2, ¶59.) Thus, Mizysak's amended complaint does not allege a claim against InvestiNet that plausibly occurred within one year of the filing of the complaint—that is, after August 27, 2018.

As to CenterPoint, the amended complaint alleges that it engaged in collection activity "in 2018." (Case No. 19-CV-1347, ECF No. 1-2, ¶¶ 58-59.) Specifically, Mizysak alleges that "Defendant CenterPoint also joined in on the collection attempts on the invalidly assigned judgment and wage garnishment in 2018." (Case No. 19-CV-1347, ECF No. 1-2, ¶¶ 58-59.)

Based on records of the state court proceedings provided by the defendants, and which the court considers pursuant to Fed. R. Evid. 201, *see White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016) ("judicial notice of public court documents is appropriate when ruling on a Rule 12(b)(6) motion to dismiss"), the garnishment was entered by the state court on May 21, 2018 (ECF No. 95-3 at 5). Thus, to the extent that the entry of the garnishment was the debt collection activity in which CenterPoint allegedly engaged without a license, that occurred outside of the limitations period.

To the extent that Mizysak is attempting to allege that subsequent garnishments (*i.e.*, the actual deductions from Mizysak's wages) constitute new acts of unlawful collection activity, she has not identified any authority to support such a claim. The garnishee's retention of the debtor's wages and its forwarding of those wages to the creditor are actions that naturally flow from the garnishment judgment.

Miszysak does not allege that either InvestiNet or CenterPoint engaged in any other collection activity, much less collection activity occurring after August 27, 2018. Therefore, the court finds that the amended complaint in *Miszysak II* fails to allege any claim against InvestiNet or CenterPoint that plausibly occurred within the statute of limitations period.

### 4.3. Wisconsin Consumer Act Claims in *Mizysak II*

Miszysak's amended complaint alleges that the defendants violated various provisions of the Wisconsin Consumer Act (WCA), Chapter 427 of the Wisconsin Statutes.

She alleges that they violated Wis. Stat. § 427.104(1)(h) by engaging in conduct that can reasonably be expected to harass the customer or a person related to the customer. (Case No. 19-CV-1347, ECF No. 1-2, ¶¶ 93-94.) The only specific allegation she offers is the following: "Defendants CenterPoint and InvestiNet's actions of engaging in collection in Wisconsin without the requisite license (and the violative nature of their actions of Wisconsin collection regulations) can reasonably be expected to harass someone." (Case No. 19-CV-1347, ECF No. 1-2, ¶ 95.)

Mizysak also alleges that the defendants violated Wis. Stat. § 427.104(1)(j), which states that a debt collector may not "[c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist." (Case No. 19-CV-1347, ECF No. 1-2, ¶ 96.) She alleges, "Defendants had knowledge that they had no right to collect on the debt due to the legally invalid assignment. Such actions can [sic] are a claim to enforce a right with knowledge it does not exist." (Case No. 19-CV-1347, ECF No. 1-2, ¶ 97.) As to CenterPoint and InvestiNet, she alleges that they "had knowledge that they had no right to engage in collection actions in Wisconsin. Such actions are a claim to enforce a right with knowledge that it does not exist." (Case No. 19-CV-1347, ECF No. 1-2, ¶ 98.)

The defendants do not explicitly move to dismiss any specific WCA claim under *Rooker-Feldman*. However, because *Rooker-Feldman* implicates the court's jurisdiction, the court must address it sua sponte. *See Ritter v. Ross*, 992 F.2d 750, 752 (7th Cir. 1993). As

noted above with respect to the parallel FDCPA claim in *Mizysak II*, the state court necessarily found that the assignment was valid. Thus, this court lacks jurisdiction over Mizysak's claim that the defendants violated the WCA by attempting to collect on a debt pursuant to an allegedly invalid assignment.

As for Mizysak's claims that CenterPoint and InvestiNet violated the WCA by not being licensed as debt collectors in Wisconsin, the defendants argue that the Wisconsin law requiring debt collectors to be licensed, Wis. Stat. § 218.04(2)(a), does not authorize a private cause of action. Mizysak responds that she is not attempting to enforce the statutory licensing requirement. Instead, she is arguing that the defendants' lack of a license resulted in violations of the WCA. She argues, "If Defendants had followed the law – and therefore not been collecting in Wisconsin – then the false affidavits would not have been filed and the putative class would not have been subjected to the illegal collection behavior." (ECF No. 96 at 12-13.) She does not further explain any basis for her WCA claim.

Mizysak's WCA claim does not articulate what the alleged "illegal collection behavior" is. If it was trying to collect a judgment that was not properly assigned to them, such a claim is barred by *Rooker-Feldman*. As explained above, the state court accepted the validity of the assignment affidavit and the United States Supreme Court is the only federal court that can set aside that judgment.

Alternatively, if the alleged "illegal collection behavior" is some other conduct prohibited by the WCA, then the absence of a license would appear immaterial. The WCA prohibits illegal collection behavior—e.g., harassment, threats of criminal prosecution, etc.—regardless of whether the debt collector is licensed. But Mizysak's amended complaint does not contain any such allegations (and, if it had, it would likely constitute an impermissible splitting of her claims in *Mizysak I*). The court also rejects Mizysak's contention that Wis. Stat. § 427.104(1)(j) authorizes a private action to enforce Wisconsin's collection agency licensing requirement. Mizysak offers no authority for this contention. Such an application would stretch the WCA far beyond its intended bounds and into means by which debtors could pursue a private action against a debt collector for a violation of any law or regulation.

Finally, to the extent that Mizysak is arguing that the "illegal collection behavior" is simply collecting without a license, her argument is circular. She does not state a plausible claim for relief by alleging, "If the defendants had not been collecting without a license, then I would not have been subjected to the defendants trying to collect without a license."

Therefore, the court will grant the defendants' motion to dismiss the WCA claims. Under *Rooker-Feldman*, the court lacks jurisdiction over the claims as Mizysak has articulated them in response to the motion to dismiss. Alternatively, the court would find that Mizysak's WCA claim fails to state a claim upon which relief may be granted.

**5. Conclusion**

Faced with attempts to collect a debt she knew she did not owe, Mizysak did what many might do—she communicated with the creditor and the debt collector and attempted to persuade them that she was not liable. However, a state court had found she was liable for the debt. To preclude any efforts to collect on that judgment, it was necessary that she get the state court to vacate the judgment.

Consequently, the *Rooker-Feldman* doctrine deprives this court of jurisdiction over most of the claims presented in the amended complaint in *Mizysak I*. Mizysak's FDCPA and WCA claims depend in large part on her claim that the defendants should have known that the debt was incurred as a result of identity theft. However, a federal court judgment in Mizysak's favor on such a claim would be inconsistent with the state court judgment against Mizysak. Similarly, a federal court judgment in Mizysak's favor on her common law conversion claim would be inconsistent with the state court garnishment, which authorized the defendants to obtain and retain the money she alleges they wrongfully acquired. Therefore, all of these claims are dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

The amended complaint in *Mizysak I* contains a single claim over which the court has jurisdiction: Mizysak's claim that the defendants violated 15 U.S.C. § 1692c(a)(2) by contacting her after they knew she was represented by an attorney with respect to the debt is not barred under *Rooker-Feldman*.

As for the claims raised in the amended complaint in *Mizysak II*, the court lacks jurisdiction over claims that the defendants violated 15 U.S.C. §§ 1692d, 1692e(2), (5), (10), 1692f(1) "when they tried to collect on a false, incomplete, illegal and otherwise void assignment of judgment." The state court accepted the assignment. For the federal court to hold that the assignment was invalid would be inconsistent with the state court garnishment judgment that depended on that assignment. For the same reason, the court lacks jurisdiction over Mizysak's parallel WCA claim. Accordingly, those claims are dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

Mizysak's claim that InvestiNet and CenterPoint violated the FDCPA by engaging in collection activity in Wisconsin without the required license is barred by the statute of limitations. And the court lacks jurisdiction over her similar claim under the WCA. Consequently, those claims are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1). Alternatively, she has failed to state a claim upon which relief may be granted.

In sum, between these consolidated actions, a single claim remains—that the defendants violated 15 U.S.C. § 1692c(a)(2) by contacting her after they knew she was represented by an attorney with respect to the debt. Having fully resolved the claims in 19-CV-1347, the Clerk shall enter judgment in that action.

**IT IS THEREFORE ORDERED** that the defendants' motions to dismiss (ECF Nos. 54, 56) are granted in part and denied in part. They are denied as to the plaintiff's claim that the "Defendants Resurgent, LVNV, and CenterPoint knew Plaintiff weas [sic]

represented by counsel with respect to the debs [sic] in question, yet they communicated directly with her via their agent in 2018," in violation of 15 U.S.C. § 1692c(a)(2). The motion is granted as to all other claims, and all other claims are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the motions to dismiss pending in *Mizysak II* (19-CV-1347, ECF Nos. 7, 10) are moot and dismissed as such.

**IT IS FURTHER ORDERED** that the defendants' motion to dismiss the amended complaint in 19-CV-1347 (ECF No. 93) is granted. The amended complaint in 19-CV-1347 (ECF No. 1-2) is dismissed. The FDCPA claims against InvestiNet and CenterPoint are dismissed with prejudice. All other claims are dismissed without prejudice. The Clerk shall enter judgment in that action.

**IT IS FURTHER ORDERED** that Mizysak's motion to compel (ECF No. 90) is dismissed as moot. The substance of the motion was relevant only to the proposed class action alleged in *Mizysak II*. Having dismissed that action, the motion is moot.

Dated at Milwaukee, Wisconsin this 27th day of February, 2020.

William E. Duffin

WILLIAM E. DUFFIN
U.S. Magistrate Judge